IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARK AND PHYLLIS VAN METER,

     Plaintiffs,

v.                                    No.   CIV 04-0107- BB/WDS

MR. Z OF ALBUQUERQUE, LLC;
GEORGE J. GONZALES and
GREAT AMERICAN INSURANCE COMPANY

     Defendants.

**PLAINTIFF'S OPPOSITION TO
GREAT AMERICAN'S MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Great American Insurance Company is beating a dead horse.  This very issue – whether
the car dealer's bond covers fraudulent misrepresentation, or only failure of title – has been
addressed by this Court **three** times, including by the Honorable Bruce Black.  Each time, the
bonding company lost this argument.

In addition, the New Mexico state courts have ruled directly on this very issue at least
twice.  Both times, the bonding company has lost the argument.  Bonding companies lose this
argument because the plain language of the statute makes clear that the bond covers **both** failure
of title and fraudulent misrepresentation.

Great American does not raise new arguments this time.  As in the past, its argument it
based primarily on the *Prince* case, which, as explained below, decides only **who** is entitled to
the bond's protection, not what illegal behavior the bond covers.

Great American's motion is not a motion for summary judgment.  Rather, it is a motion

to dismiss.  Great American claims that the Van Meters have failed to state a claim against it because they have not alleged failure of title.  The material facts, whether in dispute or not, play no role in its argument.

The Court should deny Great American's motion for summary judgment because the law is well settled that the car dealer's bond in New Mexico covers fraudulent misrepresentation.

## II.    Disputed Material Facts

Great American's motion is actually a motion to dismiss for failure to state a claim, making a discussion of the facts not relevant.  Nevertheless, the Van Meters respond to Defendant Great American's statement of "material facts."

### A.    The Material Facts of this Case Already Have Been Established by Default Judgment

This Court entered default judgment against the car dealership, Mr. Z of Albuquerque, LLC, on December 14, 2004.  It entered this judgment after an evidentiary hearing December 3, 2004.  Great American had notice and the opportunity to participate in the hearing.

This judgment is conclusive as to facts pertaining to the liability of Mr. Z and to the amount of actual damages, costs and attorney's fees.

The liability of Great American, a surety, is derivative.  Great American issued a bond, required by statute, agreeing to compensate purchasers in an amount up to $50,000 for any loss, damage and expense caused by Mr. Z, due to (1) failure of title, (2) any fraudulent misrepresentation (as occurred here), OR (3) any breach of warranty of freedom from liens.

### B.    Facts Cited by Great American – 1, 2, 4, 8, 10 – Already Have Been Decided by the Court

Great American seeks to re-litigate facts that already are established as the law of the

case.  Great American seeks to put its "spin" on the facts, but these matters necessarily were decided by the default judgment.

Fact Nos. 1, 2, 4, 8 and 10 were accepted as true, through the default judgment, and they are the law of the case, as are the remaining facts alleged in the Complaint and entered into evidence at hearing.  FRCP 55(b)(2).

**C.     The Remaining "Facts" – 3, 5, 6, 7, 9 – are Not Material to this Motion**

Facts nos. 3, 5, 6, 7 and 9 are not material.

As to Facts Nos. 3 and 9, this Court already has held that the oral and written statements of Mr. Z constituted fraud, under the Motor Vehicle Information and Cost Savings Act.

Facts Nos.5, 6, and 7 are not material to the Van Meters' claim for fraud or violations of the Odometer Act.  The federal Motor Vehicle Information and Cost Savings Act ("Odometer Act"), and common law fraud theory place the responsibility for disclosing accurately the mileage on a vehicle on the seller.  See, 49 USC 32705(a); UJI 13-1633, NMRA (2003).  The law does not place the burden on the buyer to investigate and discover the true mileage.

**D.     The Court Already Has Accepted as True Certain Facts that Proved Odometer Fraud**

By comparison, the Van Meters have come forward with evidence of odometer fraud. The Van Meters have never denied that they were told that the odometer reading was not accurate.  In fact, they allege this in their Complaint. ¶19.  However, this fact does not mean there was not fraud.  The dealer failed to tell the Van Meters that it knew that the true mileage was in excess of 213,000 miles, and that it had replaced the original odometer with one reading 89,000 miles.  The facts which supported the Van Meters' judgment were:

1.      Mr. Z purchased this truck in May, 2002.  At the time, the truck's odometer read

3

213,000 actual miles.  See, Certificate of Title (Exhibit A).

2.    Mr. Z sold this truck to the Van Meters on or about June 4, 2002.  Contract (Exhibit B).

3.    At the time, the odometer read 89,000.  Complaint, ¶ 15 (also, Defendant's Undisputed Material Facts, #4).

4.    The Van Meters' expert witness inspected the truck and determined that the odometer had been replaced.  Expert Report of Richard Diklich (Exhibit C).

5.    There is no sticker on the driver's door disclosing that the odometer had been replaced.  Expert Report of Richard Diklich (Exhibit C).

The Odometer Act requires that a transferor who replaces an odometer place a sticker on the driver's door frame, disclosing the mileage at the time the odometer was replaced.  See, 49 USC §32704.  It would stand the Odometer Act on its head to hold that a dealer can escape liability for odometer fraud by replacing an odometer with one that reads a lower mileage, and then cleverly stating that the odometer does not show the actual miles.  The dealer knows the actual miles.  One purpose of the Odometer Act is "to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers."  49 USC §32701.

Similarly, a dealer cannot escape liability for fraud, when it fails to tell a customer that it has replaced an odometer reading 213,000, with an odometer reading 89,000 miles.  Omission of a material fact constitutes fraud. *Wirth v. Commercial Resources, Inc.*, 96 NM 340, 345 (Ct. App. 1981); *Robertson v. Carmel Builders Real Estate*, 135 NM 641, 663 (Ct. App. 2003).  Further, if a person "reveals some information on a subject, it has triggered the duty to reveal all known facts." *Robertson*, 135 NM 663.  Here, the dealer revealed that the odometer did not show

4

the actual miles, but failed to disclose the reason the odometer did not show the actual miles: because the dealer had replaced the odometer. Under New Mexico law, Mr. Z had a duty to disclose all known facts about the mileage.

### III.    New Mexico Courts Have Held that the Dealer's Bond Covers Fraud

Great American Insurance Company  issued a car dealer's surety bond to Defendant Mr. Z of Albuquerque, LLC.  New Mexico law requires that a car dealer obtain a bond in order to be licensed.  NMSA 1978 § 66-4-7.  The bond is to reimburse purchasers for damages in the case of "fraudulent misrepresentation." *Id.*  Despite the plain language of the statute, Great American argues that the bond covers only fraudulent misrepresentations relating to liens on the car's title.

Great American is wrong. The issue of whether the dealer's bond covers fraud has been addressed by both the New Mexico Supreme court and district courts, and by this Court.

### A.    New Mexico State Courts Have Held that the Bond Covers Fraud

In *Prince v. National Union Fire Insurance,* 75 N.M. 313 (1965)*,* the Supreme Court stated in dicta "the bond is to protect against failure of title **or** fraud." *Prince,* 75 N.M. at 316 (emphasis added).  In *Kerr v. Schwartz*, 82 N.M. 63, 65 (1970), the Supreme court again stated that the dealers bonding statute "provides for an automobile dealer's bond and license to protect against the failure of title **or** fraud at the time of purchase." (emphasis added).

The New Mexico district courts have denied bonding companies' motions to dismiss, including one by Great American Insurance Company, making the exact same arguments Great American makes here.  *See*, Order Denying Defendant Western Surety Company's Motion to Dismiss, Judge Susan M. Conway, *Courtenay Bullock v.  Ten-S, Inc. et al* (Exhibit D); Order Denying Third-Party Defendant Great American Insurance Company's Motion to Dismiss, Judge

Geraldine E. Rivera, *McAlpine v. Zangara Dodge, Inc. v. Mountain Shadow Motor Company, Inc. and Great American Insurance* (Exhibit E).

### B.     This Court Has Held that the Bond Covers Fraud

This Court has already ruled on this issue three times, each time holding that the dealer's bond covers fraud.  In *Morey v. Miano,* 141 F.Supp.2d 1061 (D.N.M. 2001), Judge LeRoy Hansen held that the plain language of the bond statute and the interpretive cases, **including *Prince,*** stated that the statute was applicable to fraud in the sale of a vehicle.  There, Judge Hansen stated:

> [Western Surety] misinterprets the language of *Prince*. While the issue in *Prince* was whether the Plaintiff was a "purchaser" entitled to protection under the statute, the court went on to say 'The bond is to protect against failure of title *or* fraud at the time of purchase. Id at 316 (emphasis added); see also *Kerr v. Schwartz*, 82 N.M. 63, 65, 475 P.2d 457 (1970)(The auto dealers bonding statute "provides for an automobile dealer's bond and license to protect against the failure of title *or* fraud at the time of purchase.") (emphasis added).

141 F.Supp.2d at 1064. *See also*, *Rubio v. Bob Crow Chrysler-Plymouth-Dodge, Inc. et al,* 145 F.Supp.2d 1248 (D.N.M. 2001)(holding that the dealer bond covers fraud); and *Smith v. Albuquerque Autoplex Inc, d/b/a Poor Boys Auto Sales and Western Surety Company*, CIV 00-1609 BB/LCS (Court denied Western Surety's motion to dismiss, in which the bonding company made the same arguments it makes in the instant motion), Order Denying Western Surety Company's Motion to Dismiss (Exhibit F).

This issue is resolved.  Great American does not offer any new arguments in support of its untenable position.  Therefore, the Court should deny its motion.

## IV.    Great American Misinterprets the *Prince* Case

The *Prince* case, 75 N.M. 313, does not address the language of the statute which is in question here.  The Court should read *Prince* in its entirety to understand fully how Great American misinterprets the holding and how it cites dicta out of context to try to confuse the Court. **The *Prince* case merely addressed the issue of who was a "purchaser" entitled to collect under the bond, not what dealer actions the bond covered.**

*Prince* involved a plaintiff who loaned money to a dealer to buy a particular car and left that car with the dealer to resell.  The dealer kept possession of the title certificate, to make it easier for the dealer to sell the car.  Without the plaintiff's knowledge or permission, *two months later*, the dealer took the car's title certificate to a bank and used it as collateral to borrow money.  Then the dealer filed bankruptcy.

The entire issue addressed by the Supreme Court in *Prince* was whether the plaintiff was a "purchaser" covered under the bond statute, not whether the dealer's actions were covered by the statute.  The trial court held, and the Supreme Court affirmed, that the title was free from liens when acquired by the dealer.  Two months later, when the dealer improperly used the title as collateral, the plaintiff no longer was a "purchaser."[1]  In contrast, Great American does not dispute that the Van Meters were "purchasers" within the meaning of the bonding statute.

Quite simply, the Supreme Court in *Prince* does not interpret the circumstances under

---

[1] "As we view the case, the determination that title passed before any loss was occasioned is determinative."  75 N.M. 313, 315.  "The reason for the bond is to protect 'purchasers' because of failure of title.  The meaning of the word 'purchaser' cannot be extended by implication to include the plaintiff."  75 N.M. 313, 316.  "The bond is to protect against failure of title or fraud at the time of the purchase, and does not cover fraud occurring long after title has actually passed...."  *Id.*

which a purchaser is entitled to receive payment under the bond.  However, the Court does state that the **"bond is to protect against failure of title *or* fraud at the time of the purchase."** *Id*. at 316, (emphasis added), indicating that the Supreme Court agrees that the bond does not just cover failure of title, but fraudulent misrepresentations also.

Great American attempts to mislead this Court by stating that the New Mexico legislature limited the coverage of the bond after the Tenth Circuit decision in *Commercial Insurance Co. Of Newark, N.J v. Watson.*  The New Mexico legislature merely limited the bond coverage to "purchasers," and not wholesale dealers.  Again, the *Prince* court did not address specifically the issue of what types of illegal actions are covered by the bond, but rather who is entitled to collect on the bond.

Because there is no dispute that the Van Meters were purchasers (retail buyers), and that they are the intended beneficiaries of this statute, the *Prince* case simply does not apply to Great American's argument that the bond covers only failure of title, not fraud.

**V.      By the Plain Language of the Statue, the Bond Applies to "Fraudulent Misrepresentations"**

In interpreting statutes, the courts look first to the plain language of the statute. *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72 (1985).  When necessary, the court will look to "rules of grammar to aid our construction of the plain language of the statute." *Wilson et al v. Denver et al.,* 125 N.M. 308, 314 (N.M. 1998).

Great American distorts the plain language of the statute.  The car dealer bond statute, NMSA 1978, § 66-4-7 reads:

> The bond shall be payable to the state for the use and benefit of the purchaser and his vendees, conditioned upon payment of any loss, damage and expense sustained by the purchaser or his vendees, or both, **by reason of failure of the**

**title of the vendor, by any fraudulent misrepresentations or by any breach of warranty as to the freedom from liens on the motor vehicle** or motorcycle sold by the dealer, wholesaler, distributor, dealer of motorcycles only or wrecker of vehicles.  The bond shall be continuous in form and limited to the payment of fifty thousand dollars ($50,000) in total aggregate liability on a dealer's license. (emphasis added).

The letter of the law sets up three situations in which the bond must be paid: "[1] by reason of failure of title of the vendor, [2] by any fraudulent misrepresentations OR [3] by any breach of warranty as to freedom from liens on the motor vehicle...(capitalization added to word "or"; numbers inserted for emphasis).

Each of the three circumstances is an equal prepositional phrase.  The word "by" is one of the keys to interpreting the statute.  The Legislature clearly meant for there to be three possible conditions under which the bond is paid, since each of the descriptive phrases begins with "by."  Each phrase is in grammatically parallel construction, and therefore given equal weight by the framers of this language.

The second key is even more dramatic.  The statute places the word "or" between the phrases "fraudulent misrepresentations" and "breach of warranty as to freedom from liens." **Great American wants to delete that word entirely**, in an attempt to make the phrase "fraudulent misrepresentations" a modifier of the phrase "breach of warranty as to freedom from liens."

"As a rule of construction, the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." *Hale v. Basin Motor Co.,* 110 N.M. 314, 318 (1990) (interpreting section of the Unfair Practices Act); *Public Service Co. v. Public Serv. Com'n,* 106 N.M. 622, 624 (1987).  Since there is no comma between "fraudulent misrepresentations" and "breach of warranty," the legislature meant for there to be a disjunctive

meaning, where "both words [phrases] have independent significance." *Wilson, supra* at 314.

The Court can look to how the Legislature used punctuation in the same way earlier in the statute: "conditioned upon payment of any loss, damage and expense sustained." Again, the Legislature used no comma between "damage" and "expense," but clearly meant for "loss, damage and expense" to indicate three different items of compensation.

Finally, "relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." *Wilson, supra* at 314. The phrase "breach of warranty" immediately precedes the phrase "as to the freedom from liens on the motor vehicle." Under the rules of statutory construction and rules of grammar, only the phrase "breach of warranty" modifies the phrase "freedom from liens on the motor vehicle." The phrase "fraudulent misrepresentations" does not modify the phrase "freedom from liens on the motor vehicle."

Under the plain language of the statute, the Van Meters have stated a claim for relief, because they alleged that Mr. Z made fraudulent misrepresentations and omissions about the car. As the car dealer's bond holder, Great American is liable for Defendant's "fraudulent misrepresentations."

## VI.    Plaintiffs Agree that the Bond Does Not Cover Treble or Punitive Damages

Great American is well aware that the Van Meters do not seek to collect punitive or treble damages from it. The Van Meters agree that bonding companies are not liable for treble or punitive damages. It is the Van Meters' position that Great American is liable for the actual damages, and attorneys' fees and costs this Court has awarded against Defendant Mr. Z of

Albuquerque, LLC.

## VII.    Conclusion

The New Mexico Legislature intended to protect the public against dishonest car dealers who commit fraud.  The Van Meters made a claim against Great American, the bond holder for this car dealer.  Under the plain language of the dealer bonding statute, the bond covers a dealer's fraudulent misrepresentations, not just misrepresentations regarding the title.  The *Prince* case interprets **who** is a **purchaser** under the bonding statute, but does not interpret under what circumstance it applies.  Yet, even the *Prince* case states the bond statute covers fraud.  The case law establishing that the bond covers fraudulent misrepresentations is well-established.

For the foregoing reasons, the Court should deny Great American's motion for summary judgment.

Respectfully submitted,

FEFERMAN & WARREN, Attorneys for Plaintiff

_____

SUSAN WARREN
300 Central Ave., SW, Suite 2000 East
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663