FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

05 MAR 28 PH 4: 14

CLERK-ALBUQUERQUE



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARK AND PHYLLIS VAN METER,

Plaintiffs,

v.                                                  No.    CIV 04-0107- BB/WDS

MR. Z OF ALBUQUERQUE, LLC;
GEORGE J. GONZALES and
GREAT AMERICAN INSURANCE COMPANY

Defendants.

## GREAT AMERICAN INSURANCE COMPANY'S
## RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS'
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant Great American Insurance Company ("Great American"), by and through its counsel CONWAY LAW FIRM, LLC (Ann Maloney Conway and Deron B. Knoner), hereby responds to and opposes the Motion for Summary Judgment filed by Plaintiffs on March 11, 2005. Said motion was served by mail on March 11, 2005, and this response is timely if filed on or before March 28, 2005. As is set forth below, there is no precedent under New Mexico law for the imposing liability on a surety for a default judgment of its principal under a bond issued pursuant to NMSA 1978 § 66-4-7. Moreover, Plaintiffs' argument in their Motion is inconsistent with well-established surety law, as well as with general notions of due process and fair play, and Plaintiffs' Motion should be denied.

### INTRODUCTION

Currently pending before this Court is Great American's Motion for Summary Judgment which argues that general fraud that does not affect title (which is what was alleged in this matter

by Plaintiffs) is not covered by the bond issued by Great American pursuant to NMSA 1978 § 66-4-7. If the Court resolves that Motion in favor of Great American, the issue raised by Plaintiffs in their Motion for Summary Judgment becomes moot; however, for purposes of this response only, Great American will respond as if the bond covers damages for fraudulent misrepresentations which do not affect title.

In this regard, it must be noted that Plaintiffs' entire argument is based upon the claim that "[t]he Court has issued a judgment against Mr. Z for its fraudulent misrepresentations and omissions about the mileage on the truck it sold to the Van Meters." (Brief in Support of Motion for Summary Judgment, Page 2.) It is not clear that this is correct. Plaintiffs' Complaint alleges four claims for relief ((1) violation of Federal Motor Vehicle Information and Cost Savings Act; (2) violation of New Mexico Unfair Practices Act; (3) Fraud or Misrepresentation; and (4) violation of Motor Vehicle Dealers Franchising Act). The Court's judgment indicates that judgment for compensatory damages was entered for failure to disclose actual mileage, and then was trebled under 49 U.S.C. § 32701(a). The Court also entered judgment for loss of use, cost of repairs, and attorneys' fees and costs. It is not clear whether any of these damages were awarded for "fraudulent misrepresentations", whether they were awarded for technical violations of the various state and federal statutes claimed by the Plaintiffs, or whether the Court considered there to be an overlap between those two possibilities. In any event, for purposes of this response, Great American will assume that the judgment was entered for fraud, and that fraud not affecting title is covered under the bond.

## ARGUMENT

It is Plaintiffs' position that a default judgment against the principal Mr. Z of Albuquerque is binding upon Great American under its bond issued pursuant to NMSA 1978 § 66-4-7. In support of that position, Plaintiffs make the sweeping assertion that "for at least 40 years, bonding companies have known that in New Mexico, once the liability of the principal is established, they can not contest it." (Brief in Support of Motion for Summary Judgment, Page 3.) The only New Mexico authority cited in support of this assertion is NMSA 1978 § 46-6-5, *Yoakum v. Western Casualty and Surety Company*, 75 N.M. 529, 407 P.2d 367 (1965), and *State of New Mexico for the use and benefit of DAR Tile Company v. Glens Falls Ins. Co.*, 78 N.M. 435, 432 P.2d 400 (1967), none of which supports Plaintiffs' efforts to impose liability on Great American for the default judgment rendered against its principal.

First, NMSA 1978 § 46-6-5 is inapposite to the matters under consideration in this matter. That statute simply provides that, under the given conditions, a surety is estopped from denying its corporate power to execute or guarantee the relevant instrument or to assume such a liability. Great American is making no such argument about its corporate power in this matter. Its argument, as Plaintiffs should be well aware, revolves solely around whether Plaintiffs can recover under the bond properly issued by Great American for damages obtained against the principal by default judgment for fraud not affecting title.

Second, *Yoakum v. Western Casualty and Surety Company* does not support Plaintiffs' position that a default judgment against a principal binds a surety that issued a bond under NMSA 1978 § 66-4-7. In fact, when *Yoakum* is read in its full context, it is clear that it actually undercuts Plaintiffs' argument in this case. In *Yoakum*, the Plaintiff sued the automobile dealer

3

(Jones) for failure of title, along with the bank that held the undisclosed lien that caused a failure of title, and Jones' surety (Western). The dealer filed for bankruptcy and was defaulted. 75 N.M. at 530, 407 P.2d at 368.

Despite the principal's default, which under Plaintiffs' theory would have ended the case against the surety, trial went on against surety, which had made a general denial of the plaintiff's allegations, and judgment was entered against the surety. In other words, the language from the *Yoakum* decision cited to by Plaintiffs herein regarding the liability of the surety was written only after a final judgment was entered on the validity of the bank's lien against the vehicle, and was not been appealed by the Plaintiff. Such judgment was entered not after the default of the principal, but only after the full and fair litigation of the plaintiff's claims.

Finally, *State of New Mexico for the use and benefit of DAR Tile Company v. Glens Falls Ins. Co.*, 78 N.M. 435, 432 P.2d 400 (1967), does not support the argument that Plaintiffs' default judgment against Mr. Z is binding upon Great American and the bond issued under NMSA 1978 § 66-4-7. First, there is no indication in *Glen Falls* that the judgment against the principal was the result of a default. On the contrary, it appears from the discussion of the appellate court that the judgment against the principal was entered after full litigation of the claims against the principal. Second, the decision by the court in *Glens Falls*, holding that a surety is bound by a judgment, was based on the language in the bond. The bond at issue in *Glens Falls* provided that "such bond shall be subject to payment of judgments resulting from: (3) the failure of the licensee or applicant to pay any money when due for materials, labor, or supplies." 78 N.M. at 436; 432 P.2d at 401. As a result, the court wrote that, where the surety's promise is expressly conditioned upon the recovery of a judgment against the principal, a

4

judgment against a principal would be conclusive evidence of the existence of his obligation and its extent. *Glen Falls*, 78 N.M. at 436 (quoting Simpson, Suretyship, § 51, p. 261). No such language requiring payment for "judgments" against the principal is contained in NMSA 1978 § 66-4-7, which requires payment of "loss, damage and expense."

Because there is no New Mexico law to support their claim that a default judgment against a principal binds the surety that issued a bond pursuant to NMSA 1978 § 66-4-7, Plaintiffs point the Court to non-New Mexico cases, none of which are persuasive in this matter. First, Plaintiffs point to a 1951 Colorado case, *Massachusetts Bonding & Ins. Co. v. Central Finance Corp.*, 237 P.2d 1079 (Colo. 1951). It is true that in that case the surety was held liable for the default judgment entered against its principal, but it was held liable because of the language of the bond, which required that a surety issuing a bond "*shall pay* all judgments and costs adjudged against said principal on account of fraud or fraudulent representations." 237 P.2d at 1083-84 (emphasis in original).

Plaintiffs also point to *Drill South v. Int'l Fidelity Ins. Co.*, 234 F.3d 1232, 1236 (11th Cir. 2000), as authority for the proposition that the "general rule is that a surety is bound by a judgment against its surety [sic] when it had both notice and opportunity to defend." (Brief in Support of Motion for Summary Judgment, Page 4.) Yet in *Drill South*, the Court's decision that the surety was bound by the default judgment against the principal was based on its conclusion that the surety had full knowledge of default judgment, had the right under the indemnification agreement to act as attorney-in-fact and defend the principal, and the trial court had given the surety three different opportunities to step in and defend the merits of the claim against the principal. In this case, Great American has had no such right to act as Mr. Z's attorney-in-fact

(see Exhibit A hereto, Copy of Bond Application and General Indemnity Agreement), and it had no such opportunity to defend against the default (even if it had the right), as the only issue that was litigated before the Court was the extent of damages, not the entry of default or whether any fraud was actually perpetrated upon Plaintiffs by Mr. Z.

Moreover, the Eleventh Circuit's decision in *Drill South* notwithstanding, persuasive case law reaching the opposite conclusion exists in a number of jurisdictions. *See Gearhart v. Pierce Enterprises, Inc.*, 779 P.2d 93, 95 (Nev. 1989) (finding surety not responsible for principal's derelictions and not required to defend it, even where they are co-defendants and represented by same counsel); *Kliks v. McCaffrey*, 350 P.2d 417, 418 (Or. 1960) (finding that surety was not defending for principal, but was defending its own liability and was not bound by principal's default); *National Technical Systems v. Superior Court*, 97 Cal.App.4th 415 (2002) (finding judgment against principal is not binding in separate action against surety); *Kalfountzos v. Hartford Fire Ins. Co.*, 37 Cal.App.4th 1655 (1995) (disapproved on other grounds by *Wm. R. Clarke Corp. v. Safeco Ins. Co.*, 938 P.2d 372 (Cal. 1997) (finding in subsequent proceeding in same action, surety could assert its principal's defenses and setoffs, even though principal was subject to finding default judgment); *All Bay Mill & Lumber Co. v. Surety Co.*, 208 Cal.App.3d 11, 17-18 (1989) (judgment against principal is not binding on surety whether such judgment is rendered in prior action or in same action); *Treasurer and Receiver General v. Macdale Warehouse Co., Inc.*, 160 N.E. 434, 437 (Mass. 1928) (holding surety is not bound by default judgment against principal); and *Shapiro v. Marstone Distributors, Inc.*, 38 A.D.2d 604 (N.Y. App. Div. 1971) (holding surety not bound by default of principal and surety may contest its

6

liability). This is the better rule, and in a case such as this, it is the only rule which comports with Great American's rights as a surety.

As a final matter, Plaintiffs argue that the language of the bond, which provides that liability shall not attach to the bond if the principal complies with NMSA 1978 § 66-4-7, creates a binding effect on the surety as a result of the default judgment. Plaintiffs cite no law in support for this assertion, and such assertion is not consistent with the language of the bond or the statute. Indeed, the language of the bond does not operate to create any greater liability than that imposed under NMSA § 66-4-7, which, as is detailed above, is not created by a default judgment against the principal. Great American is liable under the bond for loss, damages and expenses sustained by Plaintiffs if the conditions of the bond are met. Plaintiffs have not proven that those conditions have been met, and Great American has a right to require them to do so.

## CONCLUSION

In the case at hand, Great American's promise and obligation under the surety bond was not conditioned upon the recovery of a judgment by the Plaintiffs. The bond issued to Mr. Z states that:

> [t]he bond shall be payable to the state for the use and benefit of the purchaser and his vendees, conditioned upon payment of **any loss, damage and expense** sustained by the purchaser or his vendees, or both, by reason of failure of the title of the vendor, by any fraudulent misrepresentations or by any breach of warranty as to freedom from liens on the motor vehicle or motorcycle sold by the dealer, wholesaler, distributor, dealer of motorcycles only or wrecker of vehicles.

NMSA 1978 § 66-4-7(A). The default judgment against Mr. Z is not conclusive evidence of the existence of Great American's obligation on the bond, and is not binding on Great American.

7

Great American has a right to provide its own defense, and it has the right to assert all defenses which would have been available to its principal.

WHEREFORE, Defendant Great American respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment, and grant such further relief as it deems just and proper.

Respectfully submitted,

CONWAY LAW FIRM, LLC

Deron B. Knoner
Post Office Box 1190
Albuquerque, New Mexico 87103-1190
(505) 244-0021
Fax: (505) 244-1372

Attorneys for Defendant Great American
Insurance Company

## CERTIFICATE OF SERVICE

I CERTIFY SERVICE of a true copy of the foregoing, via first-class mail, as follows:

Susan Warren
Feferman & Warren
300 Central Ave., S.W., Suite 2000 East
Albuquerque, New Mexico 87102

on this 28th day of March, 2005.

Deron B. Knoner

EXHIBIT

"A"

SENT BY:

Fill Out Application Completely
(type or print)
See Sample on Reverse Side

☐ New In Business
☒ Renewal Bond

2-20- 4 ;12:28PM ;
RECEIVED JAN 1 3 1998
Ashton Bonding Agency
3918 Juan Tabo N.E., Suite 31
Albuquerque, NM 87111
(505) 299-2214 • 1-800-???-????

***** NO FINANCIAL STATEMENT REQUIRED *****
APPLICATION FOR STATE OF NEW MEXICO MOTOR VEHICLE DEALER LICENSE BOND

$20,000 Dealer & Dismantler, Bond Premium $160          $12,500 Motorcycle Only, Bond Premium $100

1. Owner's Name  ANTHONY LOPES                          Business County  BERNALILLO

2. Marital Status:   ☐ Single          ☒ Married

3. Name of Business  MR. Z OF ALBUQUERQUE

OWNERSHIP
(CHECK ONE)

4. Business Address  10113 ACOMA SE. ALBUQUERQUE   NM 87123     ☒ Individual
   STREET        CITY        STATE       ZIP                    ☐ Partnership

5. Business Mailing Address  9608 VILLA DEL REY NE ALBUQ. NM 87111   ☐ Corporation

6. Home Address  9608 VILLA DEL REY NE ALBUQUERQUE  NM 87111

7. Business Telephone ( 505 ) 291-0005     Home Telephone ( 505 ) 823-2838

8. ☐ New Car Sales  ☒ Used Car Sales  ☐ New & Used Car Sales  ☐ Motorcycle Sales  ☐ Other

9. When did you obtain your current MVD license?  11 / ___ / 87

10. Name, Address & Telephone Number of closest living relative not living within your household

   TOM GDEBAGA  7909 ACADEMY TRAIL NE, ALBUQUERQUE, NM 87109  505-797-0644

11. Name and address of previous bonding company or agency

   ASHTON BONDING AGENCY

12. Have You ever been in this business before under a different name?  ☐ Yes  ☒ No  If Yes, list the previous name

   and business address

13. Have you ever had a claim filed against you or your bonding company? ☐ Yes  ☒ No

14. Have you or your spouse ever failed in business? ☐ Yes ☒ No  Has any company refused to issue a bond to you? ☐ Yes ☒ No

   If yes, please give particulars

**Method of Premium Payment:**          ☒ Cash/Check  ☐ Visa  ☐ Mastercard

Account No.

Print Name As It Appears On Card

Expiration Date

Authorized Signature

For Office Use Only: Authorization No.

*** The following must be completed and signed as indicated (NOTE: Each applicant's signature must be witnessed): ***
GENERAL INDEMNITY AGREEMENT

In consideration of the execution by the Surety, of the bonds herein applied for the applicant and indemnitor(s), hereinafter called the indemnitor(s) agree:

First, to pay the premium for the first year and annually in advance thereafter until said Surety is furnished with evidence satisfactory to it of the termination or its liability under the bond;

Second, to indemnify the Surety against all loss, liability, costs, damages, attorneys' fees and expenses whatsoever, which the Surety may sustain or incur by reason or in consequence of having executed said bond or any continuances, enlargements, modifications or renewal thereof or any new bond issued in continuation thereof or as a substitute therefore...

[remaining indemnity agreement text illegible]

WITNESS the following signature(s) and seal this  9th  day of  January  , 19 98 .

✓ _Valerie Jones_                          ✓X _[signature]_
   Witness as to applicant's signature        Applicant's Signature (Owner, President, or Partner)

If you are an OWNER, PARTNER, or STOCKHOLDER of the business you must sign below as an indemnitor. Also, if any OWNER, PARTNER, or STOCKHOLDER is married their spouse or husband child also sign below as indemnitor.

✓ _Anthony Lopes_  ✓X _[signature]_          ✓ 031996058
                                                Applicable Indemnitor(s) Driver's License #

GAIC BOND CLAIMS SEA    PAGE 02/03    03/28/2005 14:44    2063010512

11. Name and address of previous bonding company or agency_____

_____ ASHTON BONDING AGENCY _____

12. Have You ever been in this business before under a different name?  ☐ Yes  ☒ No  If Yes, list the previous name

and business address _____

13. Have you ever had a claim filed against you or your bonding company? ☐ Yes  ☒ No

14. Have you or your spouse ever failed in business? ☐ Yes ☒ No  Has any company refused to issue a bond to you? ☐ Yes ☒ No

If yes, please give particulars _____

---

**Method of Premium Payment:**   ☒ Cash/Check   ☐ Visa   ☐ Mastercard

Account No._____

Expiration Date_____

Print Name As It Appears On Card

Authorized Signature

For Office Use Only. Authorization No _____

---

***The following must be completed and signed as indicated** (NOTE: Each applicant's signature must be witnessed): ***

## GENERAL INDEMNITY AGREEMENT

In consideration of the execution by the Surety, of the bonds herein applied for the applicant and indemnitor(s), hereinafter called the indemnitor(s) agrees:

First, to pay the premium for the first year and annually in advance thereafter until said Surety is furnished with evidence satisfactory to it of the termination of its liability under the bond;

Second, to indemnify the Surety against all loss, liability, costs, damages, attorneys' fees and expenses whatever, which the Surety may sustain or incur by reason or in consequence of having executed said bond or any continuance, enlargements, modifications or renewal thereof or any new bond issued in continuation thereof or as a substitute therefore. Vouchers or any other evidence of payment by the Surety of any loss, liability, costs, damages, attorneys' fees and expenses whatever sustained by it by reason of the execution of said bond or in procuring its release from future liability under said bond shall be prima facie evidence of the fact and extent of the indemnitor(s) liability to the Surety;

Third, Surety shall have the right, but is not required to adjust, satisfy, compromise any claim, demand, suit or judgment upon said bond. The undersigned agrees to provide, without prejudice to the other rights of surety, upon demand, adequate collateral acceptable to the surety to protect it from all loss cost and expense including attorney fees. Surety may apply collateral to reimbursement of loss, cost, expense and attorney fees. Specific performance of this obligation is available to surety;

Fourth, that the Surety shall have the absolute right to procure its release from future liability under said bond under any law for the release of sureties, and the Surety is hereby released of and from any damages that may be sustained by the indemnitor(s) by reason of such release;

Fifth, that a representative of the Surety will be permitted at any time to examine the assets, books and records of the indemnitor(s);

Sixth, that the above agreements shall bind the undersigned indemnitor(s) and their heirs, executors, administrators, successors and assigns, jointly and severally. Surety is entitled to recover its attorney fees and costs to enforce this Agreement.

In making this application for surety, it is understood that an investigative consumer report may be prepared whereby pertinent information concerning your character, reputation, personal characteristics and mode of living may be obtained. Information as to the nature and scope of this report may be obtained upon written request.

This agreement shall constitute to the surety a security agreement and financing statement under the provisions of the uniform commercial code.

WITNESS the following signature(s) and seal this ___9th___ day of __January__ .19 9 8 .

✓ _Valerie Lopes_    ✓ X _____
Witness as to applicant's signature    Applicant's Signature (Owner, President, or Partner)

---

**If you are an OWNER, PARTNER, or STOCKHOLDER of the business you must sign below as an Indemnitor. Also, if any OWNER, PARTNER, or STOCKHOLDER is _____ then your _____ or _____ must also sign below as an Indemnitor.**

✓ _Anthony Lopes_    ✓ X _____    ✓ _031996058_
Applicant's (Indemnitor's) Name (print)    Applicant's (Indemnitor's) Signature    Applicant's (Indemnitor's) Driver's License #